**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DELL CULLUM,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-07-CV-0076 FB (NN)** |
| **DIAMOND A HUNTING, INC., a/k/a** | § | |
| **DIAMOND A RANCH,** | § | |
| **DIAMOND A SPUR RANCH, LTD., and** | § | |
| **DALENE WHITE,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

**TO:   Honorable Fred Biery**
    **Chief United States District Judge**

This report and recommendation recommends entry of a final judgment.  The district

court is familiar with this case, having been "papered with over twenty-five filings"[1] between

October 13, 2009 and January 27, 2010.  On October 2, 2009, the district court entered summary

judgment in favor of plaintiff Dell Cullum on his claim that the defendants violated his copyright

by continuing to publish his photographs in the "Leadership at the Diamond A" brochure[2] after

Cullum gave notice of his intent to terminate an oral license to use the photographs.[3]  The district

court also entered summary judgment in favor of the defendants on Cullum's claim that the

defendants violated his copyright by publishing his photographs on the defendants' website.  The

---

[1]Docket entry # 174, p. 1.

[2]The parties also refer to the brochure as the "Leader's Edge brochure."

[3]Docket entry # 147.

district court closed this case for administrative purposes on March 10, 2010,[4] and ordered the defendants to file an advisory which identified how many "Leadership at the Diamond A" brochures had been distributed and how many would be distributed in the future.  The district court directed Cullum to file a brief in which he clarified the damages for which he sought recovery on his claim about the use of his photographs in the "Leadership at the Diamond A" brochure.[5]  Although the order clearly stated that the only unresolved issue in this case is the matter of damages, Cullum continued to file documents seeking to further litigate his case, including a motion for temporary injunction[6] and a motion for sanctions against the defendants' attorney.[7]  Those motions will not be addressed in this report which will be limited to the matter of damages.

**Number of statutory damage awards**.  Cullum requested statutory damages as recovery for his copyright infringement claim involving the use of his copyrighted photographs in the "Leadership at the Diamond A" brochure.  Under 17 U.S.C. § 504, a copyright owner may elect an award of statutory damages.  The provision authorizes statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just."[8]  "Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the

_____

[4]Docket entry # 174.

[5]Docket entry # 174.

[6]Docket entry # 183 (asking for a hearing and an injunction preventing the defendants from destroying evidence relevant to copyrighted work).

[7]Docket entry # 184 (asking for further depositions and criminal investigation of the defendants' attorney).

[8]17 U.S.C. § 504(c).

2

number of works infringed, not the number of infringements.'"[9]  The parties agree that seven of Cullum's photos were used in the brochure, but disagree about whether seven works were infringed or whether the seven photos comprise a single work for purposes of damage calculation.  The Copyright Act does not define the term "work."

Cullum maintains each photo is a copyrighted work because he did not "represent the images as a collection, compilation, or derivative work to the copyright office."[10]  Cullum relies on the district court's decision in *Playboy Enterprises v. Sanfilippo*.[11]  In that case, Playboy Enterprises (Playboy) sued Five Senses Productions for reproducing, distributing, and displaying publicly Playboy's copyrighted images on its website without authority.[12]  The district judge determined that Five Senses had copied numerous files containing Playboy's protected images.[13]  Each file contained hundreds of images.  Like Cullum, Playboy sought statutory damages.  In awarding statutory damages, the district court found that "each image represent[ed] a singular and copyrightable effort concerning a particular model, photographer, and location,"[14] because each image had an independent economic value and was viable on its own.  The court reasoned that "although each of the[] images may have appeared in a singular issue of one of [Playboy's]

---

[9]*Walt Disney Co. v. Powell*, 897 F.2d 565, 569, 283 (D.C. Cir. 1990).

[10]Docket entry # 176, p. 3.

[11]No. 97-0670-IEG, 1998 U.S. Dist. LEXIS 5125, at * 1 (S.D. Cal. Mar. 24, 1998).

[12]*See Playboy Enters. v. Sanfilippo*, No. 97-0670-IEG, 1998 U.S. Dist. LEXIS 5125, at * 1 (S.D. Cal. Mar. 24, 1998).

[13]*Id*. at * 9.

[14]*Id*. at * 18-19.

3

copyrighted publications, the[] images [were] subject to re-use and redistribution in accordance with various licensing arrangements."[15]

 *Playboy Enterprises* has little relevance to the instant case because Cullum has not shown that the seven photos were subject to re-use and redistribution in accordance with various licensing arrangements. When Cullum demanded that the defendants stop using his photos, he indicated he was prepared to offer a single licensing agreement.[16] Cullum gave the photos to defendants on a single CD, without mentioning separate licensing agreements for each photo contained on the disk.[17] In addition, this case does not involve various photographers and various locations. This dispute involves a single photographer—Cullum—and a single location—the defendants' ranch. Moreover, Cullum has not shown the seven photos have independent economic value.

 The defendants maintain the seven photos are part of a compilation of photos because Cullum did not individually list the photos with the copyright office. According to the defendants, the publication of the seven photos in the brochure constitute a single infringed work. The defendants rely, in part, on the district court decision in *Tang v. Putruss*. In *Tang*, the district court considered whether photographs taken to advertise the defendant's dresses constituted a single work for the purpose of calculating damages. The photographs were

---

[15]*Id*. at * 18.

[16]Docket entry # 139, exh. 7 (Cullum stating that he had "a license agreement prepared).

[17]Docket entry # 175, exh. 1, ¶¶ 4-6; # 126, exh. D. The parties disagree about the date Cullum gave the defendants a CD containing his photos and about which photos were contained in the disk, *see* docket entry # 138, p. 5, but there appears to be no dispute that Cullum provided a single CD containing his photos.

presented on three CDs and registered on a single copyright.[18]  The *Tang* court declined to follow *Playboy*, because the infringing defendant in *Playboy* copied thousands of copyrighted images and offered the images for sale on a website, indicating each infringed image had a separate economic value.  The *Tang* court determined that the photos of the dresses constituted a single work for purposes of calculating damages, reasoning that the photos had no economic value to the plaintiff-photographer.  The purpose of the photos was to advertise the defendant's clothing line, not for the photographer to sell the photos.[19]

Here, it is questionable the photos used in the brochure have economic value.  The photos represent the defendants' ranch and were used to promote a leadership program conducted at the ranch.[20]  To the extent Cullum relies on the image titled "the Pose" to establish economic value, the photo was posted on the defendants' website—the photo was not used in the brochure.  The photo is irrelevant to a damage award because Cullum did not prevail on his claim about the use of his photos on the website.[21]  Like the photos in *Tang*, the photos in this case were registered on a single copyright.  This case is different from *Tang*, however, in that the defendant did not hire the plaintiff to take the photographs.  Cullum asked for permission to take the photos and the defendants granted permission.

The defendants also rely on *King Records v. Bennett*.  In *King*, the district court rejected

---

[18]*Tang v. Putruss*, 521 F. Supp. 2d 600, 609 (E.D. Mich. 2007) ("It is undisputed that Plaintiff's photographs are all registered on a single copyright.").

[19]*Tang*, 521 F. Supp.2d at 610.

[20]Docket entry # 176, exh. R (imaged in CM/ECF as exh. 13).

[21]Moreover, Cullum was enjoined in state court litigation from publishing the photos of the ranch.  *See* docket entry # 176, exh. F (imaged in CM/ECF as exh. 6).

the plaintiff's argument that each of twenty-two infringed song titles represented a separate work. The court observed that copyright law does not define the term "work," but the law considers all parts of a compilation as one work, "even if the constituent parts of the compilation are copyrightable in their own right."[22]   The court explained that four song titles were registered with the copyright office as a compilation under a specified title, three other song titles were registered as a compilation under another title, and the remaining fifteen song titles were registered separately.  The court determined that the twenty-two titles constituted seventeen infringed works—the four titles registered together constituted the first work, the three titles registered together constituted the second work, and the fifteen titles registered separately constituted fifteen works, for a total of seventeen works.  The court awarded statutory damages based on seventeen works.  Like *King*, Cullum registered his photographs with the copyright office as a single work titled "Pictures of the Diamond A Ranch."[23]

The reasoning of the *Tang* and *King* courts is persuasive.  Although Cullum's copyright extended protection to all of the photos on the CD submitted to the copyright office,[24] courts have found the manner of registration controlling.  In *Costar Group v. Loopnet*, the district court considered the plaintiff's argument that it was entitled to 348 separate statutory damage awards based on infringement of 348 photos.[25]  The district court considered the copyright registration controlling and determined that the plaintiff could recover thirteen statutory damage awards,

---

[22]*King Records v. Bennett*, 438 F. Supp. 2d 812, 864 (M.D. Tenn. 2006).

[23]Docket entry # 44, exh. A.

[24]*See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir.1995).

[25]*Costar Group v. Loopnet*, 164 F. Supp. 2d 688, 709 (D. Md. 2001).

based on thirteen copyright registrations.[26]  As in *Costar Group*, the plaintiff presented

insufficient "evidence that it registered copyrights for the photographs on the registration forms

separate from its database compilations."[27]  Based on the foregoing discussion, I recommend one

award of statutory damages.  The next question is the amount of the damage award.

**Calculating the damage award**.  "[T]he district court retains a wide and almost

exclusive discretion in setting the amount of statutory damages."[28]  "If the copyright owner seeks

no more than minimum statutory damages, the record on damages need not reflect much, if

anything, more than a finding of infringement.  If a greater amount of statutory damages is

awarded, the evidentiary record should adequately support that determination."[29]

In a case where the copyright owner sustains the burden of proving, and the court
finds, that infringement was committed willfully, the court in its discretion may

---

[26]*Costar*, 164 F. Supp. 2d at 712.

[27]*Costar Group*, 164 F. Supp. 2d at 712.

[28]*Hi-Tech Video Productions v. Capital Cities/ABC*, 804 F. Supp. 950, 958 (W.D. Mich. 1992).  *See also Disney Enterprises v. Farmer*, 427 F. Supp. 2d 807, 816 (E.D. Tenn.2006) ("District courts have wide discretion in setting damages within the statutory range set forth in § 504(c)(1)."); *Video Café v. De Tal*, 961 F. Supp. 23, 26 (D. Puerto Rico 1997) ([T]he copyright laws also bestow on the Court considerable discretion in determining damages under the statutory damages provisions of 17 U.S.C. § 504(c)."); *Cross Keys Pub. Co. v. LL Bar T Land & Cattle Co.*, 887 F. Supp. 219, 223-2424 (E.D. Mo. 1995) ("District courts are 'accorded wide and almost exclusive discretion in determining the size of the statutory damage award.'"); *Guillot-Vogt Associates v. Holly & Smith*, 848 F. Supp. 682, 691 n. 6 (E.D. La.1994) ("[A]lthough statutory damages may be awarded up to a sum of $100,000, the district court is afforded almost exclusive discretion, between the minimum and maximum statutory limit, in determining the amount actually awarded.").

[29]*Wechsberg v. United States*, 54 Fed. Cl. 158, 167 (Fed. Cl. 2002).  *See Video Views v. Studio 21*, 925 F.2d 1010, 1016-17 (7th Cir. 1991) ("[C]oncerns of due process and the opportunity for meaningful, if limited, appellate review contemplate that the district court would provide some explanation of the factual findings that underlie this exercise of discretion to award greater than minimum statutory damages.").

increase the award of statutory damages to a sum of not more than $150,000.  In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that . . . her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.[30]

"To prove 'willfulness' . . . the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.[31]  An infringer who has been placed on notice that her conduct constitutes copyright infringement, but who reasonably and in good faith believes she is not infringing on copyrighted material, is not "willful" for the purpose of computing a statutory damage award.[32]

Cullum seeks the maximum statutory damages award, enhanced based on willfulness; specifically, $150,000.00 for each of the seven photographs.[33]  Cullum relies on the district court's summary judgment order stating, "plaintiff has demonstrated he is entitled to summary judgment on his claim that defendants *willfully* violated his copyright by continuing to publish

---

[30]17 U.S.C. § 504(c)(2).

[31]*Island Software and Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).  *See also Los Angeles News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998) ("The court is guided by 'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like.'") (internal citation omitted).

[32]*See Zomba Enters. v. Panorama Records*, 491 F.3d 574, 584 (6th Cir. 2007); *Princeton Univ. Press v. Michigan Document Services*, 99 F.3d 1381, 1392 (6th Cir. 1996); *N.A.S. Import, Corp. v. Chenson Enterprises*, 968 F.2d 250, 252 (2d Cir. 1992); *RCA/Ariola Int'l v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (all authorities relied on *Nimmer on Copyright*).

[33]Cullum asked for $150,000 for each of the seven photos from two defendants, for a total of $2.1 million.  Docket entry # 176, p. 9.

the brochure after the date the license was terminated."[34]  However, the order on summary

judgment on which Cullum relies does not include a recitation of specific facts which would

support the finding of willfulness for purposes of an enhanced damage award.  In fact, the district

court considered only liability in that order, and intent or knowledge is not an element of

infringement.[35]  For the reasons which follow I recommend that the evidence before the Court

does not support an increase beyond the statutory maximum and recommend denying the request

for enhanced damages based on willful infringement.

Dalene White's affidavit contains evidence relevant to the issue of willfulness.  On

November 30, 2009, White attested that she did not believe she had infringed on Cullum's

copyright.  She explained the following:

> I did continue to use my Leader's Edge brochure with Dell Cullum's photographs
> until March 12, 2009.  To me, removing the photographs sooner would have been
> an admission that I stole the photographs as Dell Cullum had accused me, which
> simply was not true.  Dell Cullum had given me the photographs.  I had allowed
> Dell Cullum to freely come into my home. . . . I believed that at [the March 12,
> 2009] hearing Judge Biery did believe me that I had not stolen Dell Cullum's
> photographs and that Dell Cullum had given me the photographs.  I stopped
> distributing the Leadership at the Diamond A brochures containing Dell Cullum's
> photographs on March 12, 2009 and I destroyed all the remaining brochures. . . .[36]

This evidence is important in considering whether to increase a statutory-damage award because

it does not indicate White knew her use of the photographs infringed plaintiff's copyright.  Prior

---

[34]Docket entry # 147, p. 8 (italics added).

[35]*See Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992) ("The defendant's
intent is simply not relevant: The defendant is liable even for 'innocent' or 'accidental'
infringements."); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986)
("Even an innocent infringer is liable for infringement.  Under § 501(a) intent or knowledge is
not an element of infringement.").

[36]Docket entry # 178, exh. 7, ¶¶ 12-13.

to March 12, 2009, the district court had not ruled on the parties' motions and determined

whether the photographs were protected by a copyright.  Cullum had not been established as a

copyright holder.  White was undoubtedly aware that Cullum asserted a copyright, but the

affidavit indicates she did not believe she had infringed on copyrighted work.

       In addition to the affidavit, White's deposition is also relevant to the issue of willfulness.

On February 23, 2009, White testified as follows:

> [W]hen Dell handed me that disk [of photos], there was never ever anything
> mentioned about copyrights, releases, no nothing.  When he asked me for
> permission to take pictures on the ranch, I said, of course, and once in awhile I
> may ask you to even take one for me.  There was nothing mentioned about
> copyrights or permits. . . . I can't explain anymore than I already have.  He never
> said anything.[37]

Cullum never controverted this testimony, other than generally asserting that White stole his

photos.[38]  Uncontroverted, this testimony reflects a reasonable and good faith belief White was

not infringing on copyrighted material by using photos of her ranch in her brochure promoting

the "Leadership at Diamond A Ranch" program.

       White has steadfastly maintained that Cullum gave her the photos without restriction on

use.  Cullum asked White for permission to take photos of White's ranch.  Cullum has not

offered proof that he told White the photos were protected by a copyright or that he intended to

profit from photos of the ranch.  Cullum has not testified that he told White that she could not

use the photos.  Cullum did not assert a copyright interest in the photos until after White passed

him over for promotion to ranch foreman and Cullum left the ranch.  Under the circumstances,

---

[37]Docket entry # 78, exh. 9, p. 42.

[38]Docket entry # 162, exh. 9.

White could reasonably believe that she was not infringing on copyrighted photos.

Throughout this case, Cullum has characterized White as a sophisticated business woman who took advantage of his photos for personal profit.[39]  He further maintained that White used the differences in the parties' socioeconomic status to obtain an unfair advantage in this case.[40]  Cullum has consistently accused White of bad faith, deception, misconduct, and criminal activity.[41]  Yet a state court jury found that Cullum defamed White and rendered a verdict in White's favor in the amount of $200,00.00.[42]  The evidence shows that White used the seven photos in the brochure, but it does not show she willfully infringed on copyrighted work.  For this reason, the record does not support an enhanced award and I recommend denying plaintiff's request for enhanced damages.  The next question is the appropriate amount of damages within the statutory damage range.

**Amount of statutory damage award**.  For the reasons which follow, I recommend that the district court find that the record does not support more than the minimum statutory damage award.  In determining statutory damage awards, courts have considered the following: (1) "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind—whether willful, knowing, or merely innocent,"[43] (2) whether the parties complied with

---

[39]Docket entry # 165.

[40]Docket entry #s 172 & 179.

[41]Docket entry #s 103, 112, 113, 115, 167 & 179.

[42]Docket entry # 161, exh. 21.

[43]*N.A.S. Import, Corp. v. Chenson Enterprises*, 968 F.2d 250, 252 (2d Cir. 1992).

their contractual obligations,[44] (3) the need to sanction and/or vindicate the statutory policy

discouraging infringement,[45] (4) the avoidance of punishment,[46] and (5) prior infringing

conduct.[47]

Expenses saved.  No evidence indicates the defendants saved expenses as a result of

using Cullum's photos in the "Leadership at the Diamond A Ranch" brochure.  To the extent

Cullum may claim that the defendants saved the expense of a paying for a license to use the

photos, the expense would have been expended before Cullum revoked the oral license to use the

photos.  The evidence shows that the cost of the brochure was invoiced on July 13, 2006.[48]

Cullum revoked the license to use the photos on April 10, 2007.[49]  This factor weighs in favor of

a minimum damage award.

Profits reaped by the defendants.  No evidence indicates the defendants reaped a profit

--------------------------------------------------

[44]*Frankel v. Stein & Day*, 470 F. Supp. 209, 215 (S.D.N.Y. 1979).

[45]*Peer Int'l Corp. v. Pausa Records*, 909 F.2d 1332, 1337 (9th Cir. 1990).

[46]*Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 915 (D. Conn. 1980) ("[T]he Act contemplates an award of statutory damages in lieu of actual damages and profits, and not an award premised on notions of penalty or punishment."); *Doehrer v. Caldwell*, No. 79-C-394, 1980 U.S. Dist. LEXIS 10713, at * 5 (N.D. Ill. Nov. 28, 1980) ("Statutory damages are not to be regarded as penalties. The purpose of statutory damages is to permit a wronged plaintiff to recover where there is insufficient proof of actual damages or profits.").

[47]*Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (referring to the defendant's prior copyright litigation—an "indication that the business of encroaching upon others copyrights is not unfamiliar to the defendant"—telling in awarding statutory damages); *Boz Scaggs Music*, 491 F. Supp. at 914 (in awarding statutory damages, prior copyright litigation involving the defendant considered).

[48]Docket entry # 179, exh. G.

[49]Docket entry # 147, p. 8.

from using the photos.  According to Cullum, defendant White's 2006 income tax return shows

$17,027 in income from the Leader's Edge program (the program promoted in the  "Leadership

at the Diamond A" brochure) and White's 2007 return shows no income from the program.

Cullum complains that he cannot show the defendants reaped benefits from his photos because

he cannot obtain discovery of non-party MDBW Enterprises's income tax return, which

ostensibly reflects the 2007 income for the Leader's Edge program.  That may be, but MDBW

Enterprises is not a party to this lawsuit.  To the extent the 2006 tax return is indicative of

potential income for 2007, no evidence suggests the 2006 income resulted from the use of

Cullum's photos.  This factor weighs in favor of a minimum damage award.

Cullum's loss revenues.  Cullum maintains he and his wife lost their livelihoods as a

result of the defendants activities.[50]  However, Cullum contacted the defendants' customers,

posted defamatory statements on a website created to destroy the defendants, and disparaged the

defendants,[51] resulting in a state-court order enjoining him from using his photos.  To the extent

Cullum's photos held economical value, no evidence supports Cullum's claim that the

defendants' actions diminished the commercial value of his work.[52]  This factor weighs in favor

of a minimum damage award.

The defendants' state of mind.  As previously discussed,  White testified that she used the

photos because she believed Cullum gave them to her.  She did not willfully infringe material

protected by copyright.  This factor weighs in favor of a minimum damage award.

_____

[50]Docket entry # 165, p. 2.

[51]SA-07-CV-410, docket entry # 1, exh. 1,White's state-court complaint.

[52]Docket entry # 165, p. 3.

Compliance with contractual obligations.  No contract existed between the parties.  This factor does not apply to this case.

Need for sanctions.  There is no need to sanction the defendants.  This case has been pending for over three years.  The defendants have undoubtedly expended tens of thousands of dollars to defend themselves; if Cullum's attorney's fees are indicative of defense costs, then hundreds of thousands of dollars.  In addition to costs associated with this federal lawsuit, the defendants were forced to file a successful lawsuit in state court to defend their reputations and business efforts.  Under the circumstances, it is improbable the defendants will ever again infringe upon Cullum's photos.  This factor weighs in favor of a minimum damage award.

Avoidance of punishment.  Although courts may consider willfulness in determining whether to enhance a statutory damage award, "[t]he purpose of statutory damages is to permit a wronged plaintiff to recover where there is insufficient proof of actual damages or profits."  Here, Cullum cannot prove actual damages."[53]  His inability to profit from his own photos resulted  from his own conduct.  This factor weighs in favor of a minimum damage award.

Prior infringing conduct.  There is no evidence of prior infringing conduct.  This factor weighs in favor of a minimum damage award.

Conclusion.  The balance of these factors weighs in favor of the Court awarding only the minimum damage award of $750.00. Although Cullum complained that White failed to end this litigation when he notified her that she was using copyrighted photos,[54] it is Cullum, not White, who protracted this dispute.  For example, Cullum persisted in seeking discovery of White's

---

[53]*Doehrer*, No. 79-C-394, 1980 U.S. Dist. LEXIS 10713, at * 5.

[54]Docket entry # 176, p. 4.

Mary Kay retirement income when nothing indicated that income related in any way to the use of the photos.  At least once, White offered to settle this dispute—by setting aside the $200,000.00 state-court damage award and waiving Judge Rodriguez's $4,375.00 sanction award for improper removal.[55]  Even after the district court determined liability and clearly instructed the parties that the only remaining issue before the Court was damages, Cullum persisted in filing extraneous and unrelated motions and briefs, including asking the court to refer his allegations about the defendants' attorney for criminal investigation.[56]  I recommend a minimum award of $750.00. The last issue before the Court is Cullum's request for attorney's fees.

**Cullum's costs and attorney fee request**.  Cullum seeks an award of costs and attorney's fees in the amount of $223,786.65.  Copyright law permits the district court to award costs and a reasonable attorney's fee to a prevailing party.  "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."[57]  In exercising equitable discretion, courts may consider such factors as "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"[58]

In this case, both Cullum and the defendants prevailed on a copyright claim—Cullum on

---

[55]Docket entry # 161, exh. 1.

[56]Docket entry # 184.

[57]*Fogerty v. Fantasy*, 510 U.S. 517, 534 (1994).

[58]*Fogerty*, 510 U.S. at 534 n.19 (quoting the Third Circuit and agreeing with considering the factors "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner).

the claim about the brochure, and the defendants on the claim about the website.  Consideration of the above factors, however, does not weigh in favor of an award for either side of this dispute.

Frivolousness.  Ordinarily, a claim is frivolous if it lacks an arguable basis either in law or in fact.  The summary-judgment result in this case shows that neither Cullum's claims nor the defendants' defenses lacked an arguable basis either in law or in fact.  Neither the claims nor defenses were frivolous.  The factor does not weigh in favor of an award of costs and attorney fees for either party.

Motivation.  The question of motivation is a harder question.  The evidence indicates Cullum asserted copyright protection after he left the Diamond A Ranch.  To what extent the pass-over for promotion to ranch foreman served as Cullum's motivation for asserting copyright infringement will probably never be known, but the allegations and judgment in the state-court case are telling.  Notably, Cullum attempted to remove the state-court litigation to federal court twice, insisting that the state-court case involved a question of copyright law.  The allegations and judgment in the state-court case suggest Cullum's motivation in the lawsuit may have been to harm the defendants, rather than to protect copyrighted photos.  In contrast, the defendants's motivation in this lawsuit was to defend themselves from Cullum's claims.  Nevertheless, the defendants persisted in distributing the Leadership at the Diamond A brochure after Cullum asserted copyright protection.  What motivated the defendants to continue doing so is unknown.  Motivation does not weigh in favor of an award of costs and attorney fees for either party.

Objective unreasonableness.  However committed Cullum may be to protecting his copyrighted photos, there were numerous points in this litigation when Cullum should have conducted a cost-benefit analysis about the viability of his claims, the potential for a damage

award, and the likelihood of recovering costs and attorney's fees.  Despite opportunities to cut his

losses, Cullum persisted.  Now Cullum faces a $200,000.00 judgment in state court and a

$4,375.00 sanction for improper removal, and purports to have expended $223,786.65 in costs

and attorney's fees, all over seven photos he cannot use.  Cullum insisted from the outset that his

photos hold great economic value, but the photos in the brochure appear to have value to only the

defendants.  Under the facts of this case, it was objectively unreasonable for Cullum to believe

continued litigation offered a large statutory damage award and a full recovery of costs and

attorney's fees.  On the other hand, the defendants vigorously defended themselves, and at least

once, offered to settle this case by setting aside the state court judgment and waiving the federal

court sanction.  Judge Justice, however, observed on December 1, 2008, that all parties had

demonstrated a consistent lack of good faith in participating in discovery.[59]  In addition, the

district court observed on March 3, 2009, that "[a]cerbic shrillness seems to be creeping into this

case,"[60] and admonished the parties that such behavior would not be tolerated.  The district court

was compelled on March 16, 2009, to admonish the parties about the possibility of sanctions

under Rule 11, stating that the court "expected the parties to engage in full and open dialog, laying

all cards on the table."[61]  The admonishment fell on deaf ears.[62]  The record reflects objective

---

[59]Docket entry # 80.

[60]Docket entry # 125.

[61]Docket entry # 135.  *See also* docket entry # 136.

[62]*See* docket entry # 180 (advising the court that the girlfriend of White's son had filed a grievance with the State Bar complaining about alleged unethical conduct by the defendants' attorney); # 183 (referring to the grievance and seeking injunctive relief); # 184 (asking the court to sanction the defendants, refer the case for criminal investigation, and to reconsider previous orders).

unreasonableness on both sides.  This factor does not weigh in favor of an award of costs and attorney fees for either party.

        Compensation and deterrence.  There is no need for compensation.  To the extent Cullum's photos held economic value, that value was destroyed when Cullum engaged in the defamatory practices that lead to the state court judgment.  Cullum should not be compensated for value he himself destroyed.  There is likewise no need for deterrence.  Cullum no longer works for the defendants.  It is implausible to believe Cullum will ever be permitted back on the Diamond A Ranch.  Thus, Cullum will never photograph the ranch again such that this situation can reoccur.  Neither the need for compensation or deterrence weighs in favor of an award of costs and attorney's fees.

        Conclusion. The above factors weigh against Cullum's request.  I also note that Cullum made no attempt to segregate costs and attorney's fees associated with the claim on which he prevailed (the brochure claim) from the costs and attorney's fees associated with the claim on which he did not prevail (the website claim).  In addition, Cullum did not submit the information needed to apply the *Johnson* factors[63] to his request.[64]  Instead, he boldly asserted entitlement to costs and attorney fees in the amount of $223,786.65.  Although the defendants asserted a right to

_____

        [63]The *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

        [64]Docket entry # 177.

costs and attorney's fees, defendants at least recognized that an award lies within the court's discretion.[65]  As prevailing parties, the parties should bear their own costs and attorney's fees.

**Recommendation**:  I recommend awarding statutory damages in favor of Cullum, based on one work infringed in the minimum amount of $750.00.  I recommend Cullum's request for costs and attorney fees be denied.  I also recommend enjoining the defendants from using any photo taken by Cullum for any purpose.  In preparing these recommendations, I observed that Cullum has never prosecuted his claim under the Lanham Act.[66]  To the extent that claim is viable, Cullum waived the claim by never prosecuting the claim.[67]  I recommend entry of a final judgment, without further proceedings.  If the court accepts these recommendations, it can deny the pending motions (docket entry #s 183 & 184) as moot.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days

---

[65]Docket entry # 178, exh. 13, ¶¶ 15-18.

[66]Docket entry # 32, p. 6.

[67]Cullum alleged that the defendants violated the Lanham Act by passing off his copyrighted photographs as their own.  "The Lanham Act prohibits passing off goods . . . as those of a competitor by employing substantially similar trade dress which is likely to confuse consumers as to the sources of the product."  *Engineering Dynamics v. Structural Software*, 26 F.3d 1335, 1350 (5th Cir. 1994).  Nothing in the record suggests the defendants passed off Cullum's photographs "by employing substantially similar trade dress which [was] likely to confuse consumers as to the sources of the product."  The evidence demonstrates that the defendants are not in the business of selling photographs and did not sell Cullum's photographs.

after being served with a copy of same, unless this time period is modified by the district court.[68] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[69]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[70]

      **SIGNED** on September 13, 2010.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[68]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[69]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[70]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).